UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**GLEN RUSHEFSKY**, on behalf of himself and all Others similarly situated,

Plaintiff,

v.

**SHOKZ TECHNOLOGY, INC**

Defendant,

Docket No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, GLEN RUSHEFSKY ("Plaintiff" or "Mr. Rushefsky"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against SHOKZ TECHNOLOGY, INC ("Shokz" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.shokz.com, in a manner that is fully accessible to blind and visually impaired consumers.

## INTRODUCTION

1. Plaintiff **GLEN RUSHEFSKY** is a legally blind resident of Bronx County, New York, registered with the New York State Commission for the Blind under Registration No. **284906**. According to a July 15, 2025 medical evaluation by **Dr. Samuel R. Mendel, MD**, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with **Leber Hereditary Optic Neuropathy (“LHON”)**, a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. Dr. Mendel documents that Mr. Rushefsky suffers from profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity, meeting both

federal and New York State criteria for legal blindness. Due to the severity and permanence of his condition, Dr. Mendel recommends that Mr. Rushefsky receive 24-hour supportive care to ensure his safety and ability to perform activities of daily living. *See Exhibit A.*

2. As a result of his permanent vision loss, Mr. Rushefsky depends entirely on screen-reader software, including **NonVisual Desktop Access ("NVDA")**, to navigate websites, read product information, and complete online purchases. When a website is properly structured, NVDA can announce images, identify buttons, read product descriptions, and allow blind consumers to shop independently. When a website lacks proper coding, however, NVDA cannot interpret essential content, leaving blind users unable to browse or complete transactions.

3. Defendant **SHOKZ TECHNOLOGY INC.** owns and operates the commercial website www.shokz.com, which sells open-ear and bone-conduction headphones, accessories, and related audio products to consumers nationwide, including residents of New York. The Website serves as Defendant's primary online storefront and a central component of its retail operations. Defendant is responsible for ensuring that the Website is accessible to blind and visually impaired consumers in accordance with federal, state, and local civil rights laws.

4. On **November 12, 2025**, **December 3, 2025**, and **January 14, 2026**, Mr. Rushefsky visited **www.shokz.com** using NVDA with the intention of purchasing two headphone products—one for his own use during home workouts, and a second for his home health aide and workout partner so they could exercise together safely and communicate effectively. Plaintiff relies on accessible online shopping platforms to review product specifications, compare models, evaluate features, and complete purchases. His visits to the Website were motivated by a genuine desire to obtain these products, but he

was unable to do so because of the Website's accessibility barriers.

5. During each visit, Mr. Rushefsky encountered multiple obstacles that prevented him from navigating or purchasing merchandise. NVDA announced product images only as "graphic," interactive elements as unlabeled buttons, and essential purchase controls—such as "Add to Cart"—without any accessible name or function. These failures prevented him from understanding product details, selecting product options, or adding items to his cart. Defendant offered no accessible alternative for blind consumers to obtain the same information or complete a purchase.

6. Automated testing corroborates the barriers Mr. Rushefsky personally experienced. A **SortSite automated accessibility scan** of www.shokz.com — terminated at **42%** due to excessive crawl time—identified hundreds of WCAG 2.1 Level A and AA violations across the Website, including missing alternative text, placeholder alt attributes, empty headings, inaccessible buttons, keyboard-inaccessible controls, improper use of aria-hidden, broken ARIA references, unlabeled iframes, missing table headers, and decorative images coded with non-null alt text. These findings demonstrate that the Website's accessibility failures are widespread and systemic. Exhibit B

7. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Mr. Rushefsky—and all similarly situated individuals—the full and equal enjoyment of Defendant's goods, services, privileges, and advantages, in violation of Title III of the Americans with Disabilities Act, the New York State Human Rights Law, the New York City Human Rights Law, and the New York State Civil Rights Law.

8. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure

that the Website is—and remains—fully accessible to blind and visually impaired consumers in substantial conformance with WCAG 2.1 Level AA.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188 because Plaintiff asserts claims arising under Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. The Court also has supplemental jurisdiction over Plaintiff's related state and municipal law claims pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts.

10. Supplemental jurisdiction is proper under 28 U.S.C. § 1367 for Plaintiff's causes of action brought under the **New York State Human Rights Law**, Executive Law § 290 et seq. ("NYSHRL"), the **New York City Human Rights Law**, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and the **New York State Civil Rights Law**, Article 4, §§ 40-c and 40-d ("NYCRL"), because each of these claims is intertwined with the ADA violations alleged herein.

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)–(c). Plaintiff resides in Bronx County, accessed and attempted to use Defendant's Website from within this District, and experienced the discriminatory effects of Defendant's conduct here. A substantial portion of the events giving rise to this action—including Plaintiff's attempts to browse and purchase merchandise and his encounters with accessibility barriers—occurred within this District.

12. Defendant **SHOKZ TECHNOLOGY INC.** conducts substantial and continuous business within this District by marketing, promoting, and selling its audio

products to New York consumers through its highly interactive commercial Website, www.shokz.com. Defendant intentionally directs its online retail operations to New York residents by transmitting digital content into the state, processing online orders shipped to New York addresses, and engaging in nationwide e-commerce that includes and targets consumers located in this District. Courts within this Circuit have repeatedly held that such deliberate and ongoing online commercial activity establishes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

13. Accordingly, jurisdiction and venue are proper in this Court because Plaintiff resides in this District, accessed the Website from this District, and suffered injury here. Courts in this Circuit consistently recognize that accessibility barriers encountered by users within the forum state provide a sufficient basis for exercising personal jurisdiction over out-of-state website operators whose digital platforms serve or target New York consumers.

## THE PARTIES

14. Plaintiff **GLEN RUSHEFSKY** is a legally blind resident of Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. **284906**. As reflected in a July 15, 2025 medical evaluation by **Dr. Samuel R. Mendel, MD**, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary

of Mount Sinai, Mr. Rushefsky has **Leber Hereditary Optic Neuropathy (“LHON”)**, a degenerative mitochondrial condition that causes rapid and permanent loss of central vision. Dr. Mendel reports that Mr. Rushefsky exhibits profound central scotomas, severely diminished visual acuity, and markedly reduced contrast sensitivity. Because of this irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate websites, interpret product information, and complete online transactions independently.

15. Defendant **SHOKZ TECHNOLOGY INC.** is a business entity that owns, operates, and maintains the commercial retail website www.shokz.com, through which it markets and sells open-ear and bone-conduction headphones, audio accessories, and related consumer electronics to customers throughout the United States, including New York residents. The Website functions as a fully interactive online storefront and a primary channel through which Defendant promotes, advertises, and sells its merchandise.

16. Defendant markets and distributes its products directly to New York consumers through its Website, transmits digital content to users located in this District, and maintains an interactive e-commerce platform that allows consumers to browse products, review specifications, compare models, access promotions, and complete purchases. The Website includes detailed product pages—such as those for the OpenRun, OpenFit, and OpenSwim product lines—that display images, descriptions, technical specifications, and purchasing information to consumers nationwide. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner accessible to individuals who rely on screen-reading technology.

17. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this

District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

18. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines ("WCAG 2.1") constitutes unlawful discrimination and violates federal accessibility standards.

19. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

20. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22. Plaintiff **Glen Rushefsky** is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28 C.F.R. § 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

23. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

See also American **Foundation** for the Blind, *Screen Readers*, AFB Technology

Guide (last accessed June 12, 2025), noting that approximately 26 million American adults report significant vision impairment. *Id.* at 375.

24. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG 2.0" and "WCAG 2.1"), which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

25. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

- Missing text equivalents for non-text elements
- Unlabeled frames and navigation regions
- Scripts without accessible alternatives
- Inaccessible forms and input fields
- Content conveyed solely through visual presentation
- Inability to resize text without loss of functionality
- Time limits that cannot be adjusted or disabled
- Missing or ambiguous page titles
- Links lacking descriptive context
- Keyboard focus indicators that are not discernible
- Undetectable default language settings
- Components that trigger unexpected context changes
- Settings that alter context without user notice
- Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts
- Improperly nested markup, duplicate attributes, and non-unique IDs
- Inaccessible Portable Document Format (PDF) files
- User interface elements whose roles and states cannot be programmatically determined (items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology)

## STATEMENT OF FACTS

26. Plaintiff **GLEN RUSHEFSKY** is a legally blind consumer residing in Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. **284906**. As documented in a July 15, 2025, medical evaluation by **Dr. Samuel R. Mendel, MD**, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with **Leber Hereditary Optic Neuropathy ("LHON")**, a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of this permanent impairment, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions.

27. LHON is a permanent, non-reversible condition for which there is no curative treatment. Mr. Rushefsky's remaining peripheral vision is insufficient for reading standard print, recognizing images, or visually interpreting digital interfaces. As a result, he depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

28. In late 2025 and early 2026, Mr. Rushefsky became interested in purchasing two specific headphone products from **Shokz Technology Inc.**: (1) a pair of **OpenRun-series** open-ear headphones for his own use during home workouts, and (2) a pair of **OpenFit-series** headphones for his home health aide and workout partner, so they could exercise together safely and communicate effectively. As a blind consumer who

relies on detailed product descriptions, accessible specifications, and properly labeled controls, he selected Shokz because of its reputation for producing lightweight, open-ear headphones designed for fitness and safety. His interest in these specific products motivated him to visit **www.shokz.com** to explore and purchase these items.

29. On **November 12, 2025**, using NVDA on his Windows computer, Plaintiff navigated to the **OpenRun** product page on www.shokz.com by activating a link labeled "OpenRun" from the site's product listings. Once there, NVDA announced the page title and some headings but failed to provide accessible information for core interactive elements. The main product image for the OpenRun headphones appeared to NVDA only as "graphic," without any alt text describing the product, its color, or its open-ear design, leaving Plaintiff unable to confirm visually conveyed details such as model type, frame shape, or distinguishing features. When he attempted to move to the color or configuration options, NVDA read only isolated text such as "Black," "Blue," or "Solar Red," without identifying them as interactive selectors or indicating which option was selected. NVDA reached the "Add to Cart" control but announced it generically as "button," and when focus moved away, there was no accessible confirmation that any item had been added to the cart. Several links and headings in the mid-page and lower portions of the product page were announced simply as "link" or "heading" with no descriptive context, making it impossible for Plaintiff to use NVDA's link or heading lists to navigate efficiently among description, specifications, and "You may also like" sections. Because of these missing labels and empty links, he could not confidently identify the product configuration, confirm the price, or execute a successful "Add to Cart" action for the OpenRun headphones on that visit.

30. On **December 3, 2025**, Plaintiff returned to www.shokz.com intending to

select and purchase the **OpenFit** or **OpenFit Air** headphones for his home health aide. Using NVDA, he reached the OpenFit product page from a category listing, where sighted users can choose between colors, view price information, and complete checkout. NVDA announced the main page heading as "OpenFit," but the primary product image and additional thumbnail images were once again read only as "graphic" or "link" without any alt text indicating that they depicted OpenFit headphones or their charging case. When Plaintiff attempted to navigate to the color or configuration controls, NVDA encountered toggles rendered simply as unlabeled "button" or "group," without any programmatically associated label indicating the selected color or configuration. The "Add to Cart" control appeared in NVDA as an unidentified "button" adjacent to unlabeled quantity and payment widgets, and when he activated it, there was no accessible confirmation that any item had been added to the cart. Customer review sections were announced only as "5 stars," "reviews," and multiple "link" items with no clear association to specific review content or headings. As a result, Plaintiff could not determine which configuration he was selecting, what the price was, whether the selected item was in stock, or how other consumers had rated the headphones, and he was therefore unable to complete a purchase of the OpenFit headphones on that date.

31. On **January 14, 2026**, Plaintiff visited the "All Headphones" browsing page on www.shokz.com to compare the OpenRun, OpenRun Pro, OpenFit, and OpenFit Air models. This page presents numerous product tiles and filter options that, for sighted users, display product names, images, list prices, and promotional pricing. When Plaintiff navigated this page with NVDA, most product images were announced only as "graphic" or "image," without any alt text identifying the model displayed, and several linked images were announced as "link" with no accompanying name. Product names and prices appeared

inconsistently in the reading order; in multiple instances, NVDA read the price ("$129.95," "$179.95," or similar amounts) without clearly associating that price with any particular product name, because these elements were separated by empty links and improperly structured markup. Filter and sort controls labeled visually as "Filter," "Sort By," "Best Sellers," and "Price" were not exposed as properly grouped form controls; NVDA announced them as isolated "button" or "list box" elements with no clear relationship to the underlying options, and in some cases activating a filter produced no audible change in focus or state. Because essential filters and sort options were not announced in a coherent way, Plaintiff could not meaningfully refine results by model, price range, or features, nor could he reliably move between individual product tiles to compare the OpenRun, OpenRun Pro, OpenFit, and OpenFit Air models. The combination of missing image descriptions, empty links, and unlabeled filter controls prevented him from understanding which products were on sale, which were new releases, and which were available in specific colors or configurations, thereby obstructing his ability to identify and select the items he wanted.

32. The persistent and page-specific accessibility barriers Plaintiff encountered align with the objective violations documented by a **SortSite automated accessibility scan** of www.shokz.com. . The scan, which Plaintiff stopped at **42%** due to excessive crawl time, identified hundreds of WCAG 2.1 Level A and AA violations across the Website, including:

missing alternative text on key product images;

placeholder alt attributes such as "img1," "image," or "graphic";

empty or unlabeled buttons and links;

broken ARIA references;

improper use of aria-hidden on focusable elements;

missing form labels for configuration and filter controls;

unlabeled iframes;

empty headings; and

significant contrast errors.

These findings confirm that the specific barriers Plaintiff experienced on each of these pages—missing alt text, empty or unlabeled interactive controls, broken ARIA relationships, and inaccessible filters—are real, repeatable, and systemic.

33. The accessibility violations documented in the SortSite report demonstrate that Defendant's Website's inaccessibility is pervasive, not isolated. The same categories of defects—missing alternative text on critical product imagery, empty and unlabeled buttons and links, missing form labels for configuration and filter controls, broken ARIA relationships, and insufficient color contrast—appear simultaneously on the OpenRun page, the OpenFit page, and the All Headphones browsing page, showing that Defendant has failed to implement industry-standard accessibility practices across its core ecommerce flows.

34. As a direct result of these page-specific barriers, Plaintiff was unable to browse products, activate filters, read complete descriptions, select configurations, or access essential information needed to evaluate or purchase the headphones he was specifically interested in. On the OpenRun page, the lack of alt text, unlabeled selectors, and an ambiguously labeled "Add to Cart" button prevented him from selecting a configuration and confirming a purchase. On the OpenFit page, unlabeled controls, missing form labels, and broken ARIA references made it impossible for him to determine which

configuration he was choosing or whether any item had been successfully added to his cart. On the All Headphones page, missing image descriptions, empty links, and improperly labeled filter controls interfered with his ability to identify specific models, compare prices, and narrow results by features or price. His exclusion from these specific transactions was real, repeatable, and directly caused by Defendant's failure to implement industry-standard accessibility practices.

35. Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed descriptions, specifications, promotional content, customer reviews, filtering and sorting tools, and checkout functionality. Defendant relies on www.shokz.com to market and distribute its products nationwide, including to consumers in New York, and to sell its OpenRun, OpenRun Pro, OpenFit, and OpenFit Air headphones.

36. On information and belief, Defendant has operated www.shokz.com without implementing WCAG-compliant accessibility protocols. Despite long-standing federal guidance and the widespread availability of automated testing tools such as SortSite, Defendant has not remediated the barriers identified on the OpenRun page, the OpenFit page, or the All Headphones browsing page. The same categories of issues—missing alt text on critical product imagery, empty and unlabeled buttons and links, missing form labels for configuration and filter controls, broken ARIA relationships, and insufficient color contrast—persist across product listings, category pages, and navigational flows, reflecting a systemic disregard for blind and visually impaired users.

37. Plaintiff's intent to return to www.shokz.com is concrete, credible, and ongoing. His interest is not abstract or generalized; it is tied to specific products (OpenRun-series and OpenFit-series headphones), specific attempted transactions on

specific pages, and specific functional needs arising from his blindness, including the need for accessible configuration selectors, clearly labeled "Add to Cart" controls, and readable descriptions and reviews.

38. Plaintiff continues to seek the OpenRun-series headphones, a product he researched extensively and attempted to purchase during his prior visits. Because Plaintiff cannot visually inspect headphones in stores or read printed packaging, he depends entirely on accessible online product pages to evaluate features such as fit, battery life, color options, and pricing. Once Defendant remedies the alt text deficiencies, properly labels the configuration controls, and exposes the "Add to Cart" function to screen readers, Plaintiff intends to return to that specific product page, select a configuration, and complete the purchase.

39. Plaintiff also remains interested in purchasing the OpenFit-series headphones, which he attempted to evaluate during his December 3, 2025, visit. For a blind consumer, the ability to distinguish between configurations, understand the price associated with each option, and review accessible customer feedback is essential to making an informed purchasing decision. Plaintiff intends to revisit the OpenFit page to confirm availability, review customer feedback in an accessible format, and complete the purchase once the Website presents labeled controls, accessible "Add to Cart" and checkout functions, and properly structured review content.

40. Plaintiff's need for accessible online shopping is permanent and ongoing. His LHON-related vision loss prevents him from browsing physical retail stores, reading packaging, or visually inspecting headphone products. As a result, he relies exclusively on accessible ecommerce platforms to evaluate and purchase products. Shokz's Website offers a broader, more current, and more detailed selection of its headphones than physical

retailers, making it a particularly valuable resource for blind consumers seeking accessible options in the audio marketplace.

41. Plaintiff's prior attempts to shop on the Website were genuine and purposeful, motivated by his desire to purchase the OpenRun-series and OpenFit-series headphones on the specific product pages he visited on November 12, 2025, December 3, 2025, and January 14, 2026. On each occasion, he attempted to read product descriptions, review specifications and customer feedback, select configurations, and add items to his cart but was prevented from doing so by concrete, page-level accessibility barriers affecting product images, configuration selectors, filter controls, and "Add to Cart" functionality. His inability to complete these transactions does not diminish his interest in the Website; it reinforces his motivation to return once those specific barriers are removed so that he can buy the exact products he originally sought.

## CLASS ACTION ALLEGATIONS

42. Plaintiff **GLEN RUSHEFSKY** brings this action on behalf of himself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2):

> **Nationwide Class:** All legally blind individuals in the United States who have attempted to access **www.shokz.com** and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.

43. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

> **New York Subclass:** All legally blind individuals residing in the State of New York who have attempted to access **www.shokz.com** and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

44. Common questions of law and fact exist among the Class, including but not limited to:

- Whether www.shokz.com qualifies as a public accommodation or a service of a place of public accommodation under Title III of the ADA;
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace;
- Whether Defendant failed to adopt or implement accessibility policies, testing protocols, or WCAG-compliant development practices;
- Whether injunctive relief is necessary to ensure ongoing compliance with federal, state, and local disability rights laws.

45. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible controls, missing alternative text, broken ARIA relationships, and unreadable product specifications—that affect all Class members attempting to use Defendant's Website.

46. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights, digital accessibility litigation, and complex class actions. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief that will benefit all members.

47. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole. Defendant's ongoing operation of an inaccessible Website affects all blind users in the same manner.

48. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any individualized issues, and a class action is the most efficient, fair, and manageable method for adjudicating these claims.

49. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use Defendant's Website and faced exclusion due to its inaccessibility.

50. Plaintiff GLEN RUSHEFSKY brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2):

> **All legally blind individuals in the United States who have attempted to access www.shokz.com and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.**

51. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

> **All legally blind individuals residing in the State of New York who have attempted to access www.shokz.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.**

52. Common questions of law and fact exist among the Class, including:

- Whether www.shokz.com qualifies as a public accommodation or a service of a place of public accommodation under Title III of the ADA
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support

- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace

53. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

54. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

55. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

56. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

57. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use Defendant's Website and faced exclusion due to its inaccessibility.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq*.)**

58. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class Members,

repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a)."

60. Defendant's commercial website, www.shokz.com, is a service of a place of public accommodation and a primary channel through which Defendant markets, advertises, and sells its products to the general public. As such, the Website must be accessible to blind and visually impaired consumers on equal terms with sighted users.

61. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

62. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

- A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and
- A failure to take such steps may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the

> nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

63. The acts and omissions alleged herein constitute violations of Title III of the ADA and its implementing regulations. Plaintiff, who is legally blind and substantially limited in the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)–(2)(A), has been denied full and equal access to Defendant's Website, www.shokz.com**.** Plaintiff has not been provided the same goods, services, and information that Defendant makes available to sighted consumers, and the services he did receive were inferior, incomplete, and inaccessible. Defendant has failed to take prompt, effective, or equitable steps to remedy the discriminatory conditions on its Website, and the violations remain ongoing. Upon information and belief, Defendant has received prior notice of accessibility barriers through consumer complaints, automated audit findings, and industry-standard testing tools, yet has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

64. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section "Prayer For Relief" below.

## SECOND CAUSE OF ACTION
## Violation of New York State Human Rights Law ("NYSHRL")

65. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

66. At all times relevant to this action, the New York State Human Rights Law

("NYSHRL"), Article 15 of the New York Executive Law § 290 *et seq.*, covers the actions of the Defendants.

67. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

68. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.shokz.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

69. Plaintiff has visited the Website, www.shokz.com, on a number of occasions and has encountered barriers to his access that exist.

70. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

71. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

72. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and

cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

73. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

74. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

75. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of

N.Y. Exec. Law § 296(2) and the discrimination continues to date.

76. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

77. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law ("NYCRL"))**

78. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

79. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

80. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

81. "No person, because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision." N.Y.

Civ. Rights Law ("NYCRL") § 40-c.

82. § 292 of Article 15 of the N.Y. Executive Law deems a disability, "a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function." As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

83. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.shokz.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

84. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

85. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

86. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*

87. Plaintiff and the Sub-Class hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**

**(Violations of the New York City Human Rights Law ("NYCHRL"))**

88. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

89. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of any person's . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

90. Defendant is subject to NYCHRL because it owns and operates the Website, www.shokz.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

91. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

92. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of § 8-107 *et seq.* from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy

the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

93. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

(a) constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

94. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

95. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

96. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

97. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

98. Plaintiff is also entitled to reasonable attorneys' fees and costs.

99. Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies,

procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

100. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

101. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

102. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

103. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

104. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

105. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

106. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

107. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

108. Pre-judgment and post-judgment interest;

109. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

110. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions

of fact the Complaint raises.

Dated: New York, New York,
March 23, 2026

Respectfully submitted,

JOSEPH & NORINSBERG, LLC
/s/ Robert Schonfeld
Robert Schonfeld, Esq.
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No. (212) 227-5700
Fax No. (212) 656-1889
rschonfeld@employeejustice.com